## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | |
|---|---|
| **NICOLE BIGGERSTAFF,** individually and as administrator for the **ESTATE of ZACHARY LAMBRIGHT,** <br><br> *Plaintiff,* <br><br> *v.* <br><br> **ANGELIA RENE SPENCER**, in her individual and official capacities as detention officer of Haywood County North Carolina, <br><br> **GREG CHRISTOPHER**, in his official capacity as Sheriff of Haywood County, North Carolina, <br><br> **HAYWOOD COUNTY, NORTH CAROLINA**, <br><br> **JOHN/JANE DOE**, any unnamed Defendants that may be revealed through discovery, in their individual and official capacities, <br><br> *Defendants.* | Case No. _____ <br><br> **COMPLAINT** <br><br> **JURY DEMAND ENDORSED HEREIN** |

The Plaintiff, by and through undersigned counsel, complains of the Defendants as follows:

## **INTRODUCTION**

1. On or around August 19, 2019, Officer Angelina Spencer and staff of the Haywood County Sheriff's Office and Detention Center joined as Defendants in this action violated the civil rights of Zachary Lambright ("Mr. Lambright") by negligently failing to provide him proper care

while in custody at the Haywood County Detention Center. More specifically, said officers/staff committed the following acts:

    a. Negligently failing and/or refusing to provide Mr. Lambright with his prescribed psychological and/or mental health medication;

    b. Negligently failing and/or refusing to perform a proper intake medical screening of Mr. Lambright upon his booking into the Haywood County Detention Center;

    c. Negligently failing to properly supervise Mr. Lambright while housed in segregation; and/or

    d. Negligently failing to follow other protocols related to inmate medical care and/or suicide prevention as established in the Haywood County Sheriff's Office Custody Manual.

2. The above actions resulted in the wrongful death of Mr. Lambright and violations of his civil rights protected by the Eighth and Fourteenth Amendments to the United States Constitution.

3. Said violations were willfully and maliciously committed, and demonstrate a blatant, wanton disregard for Mr. Lambright's civil rights.

## JURISDICTION AND VENUE

4. This action arises under the Eighth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, the North Carolina Constitution, N.C. Gen. Stat. § 28A-18-2, et seq., and other applicable federal and/or state law, and is brought pursuant to 42 U.S.C. § 1983.

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. § 1343(3). because the Plaintiff alleges questions arising under the Eighth Amendment to the Constitution of the United States and to redress the deprivation, under color of state law, statute, ordinance, regulation, custom or usage, of rights secured by the Constitution of the United States, and because this case alleges claims that are so related to claims in the action within the original jurisdiction of this court that they form part of the same case or controversy under Article III of the United States Constitution.

6. This Court is authorized to grant the Plaintiff's prayer for relief regarding costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

## VENUE

7. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Western District of North Carolina, the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and/or, upon information and belief, the Defendants are seated and/or reside within the Western District of North Carolina.

## JURY DEMAND

8. Pursuant to the Seventh Amendment of the United States Constitution, the Plaintiff hereby requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

9. Nicole Biggerstaff ("Ms. Biggerstaff" or "Plaintiff") is a citizen and resident of Haywood County, North Carolina.

10. Defendant Angelina Rene Spencer ("Spencer") is a detention officer at the Haywood County Sheriff's Office ("HCSO") in Haywood County, North Carolina. Spencer was the officer conducting the inmate checkup rounds ("rounds") on the date that Mr. Lambright died

and was at all times relevant herein acting within the course and scope of its authority under color of law.

11. Defendant Greg Christopher ("Christopher") is the Sheriff of Haywood County. Christopher was appointed as Sheriff in 2013 and is still the acting Sheriff of Haywood County. Christopher was at all times relevant herein acting within the course and scope of its authority under color of law

12. Defendant Haywood County, North Carolina, ("Haywood County") is a governmental subdivision of the State of North Carolina and is a municipal entity organized under the North Carolina Constitution and the laws of the State of North Carolina. Haywood County has the authority to sue and be sued and was, at all times relevant herein, acting within the course and scope of its authority under color of law.

## FACTS

12. At all relevant times, the Defendants were acting under color of statute, ordinance, regulation, custom, or usage of the State of North Carolina, or a governmental subdivision or municipal entity thereof.

13. On or about January 25, 2019, Mr. Lambright was arrested for a variety of charges and held in the Haywood County Detention Center ("HCDC"). An intake screening was completed on that date by Traci Davis ("Davis"), an employee at HCDC.

14. On or about March 9, 2019, Mr. Lambright was released from HCDC on bond. Prior to Mr. Lambright's release, another screening was completed by Jennifer Adams ("Adams"), an employee at HCDC.

15. On or about August 9, 2019, Mr. Lambright was arrested in Florida for failing to appear for his scheduled court date and was thereafter extradited from Florida to North Carolina.

16. Upon Mr. Lambright's arrival at HCDC, a medical questionnaire and a mental health screening form was completed by Michael Martin ("Martin"), which appear almost identical to the medical intake screenings conducted by Davis and Adams. Upon information and belief, no other intake screening of Mr. Lambright was completed.

17. On August 15, 2019, Mr. Lambright was placed in a segregation cell, commonly referred to "lock back" at HCDC, because officers observed him having a physical altercation with Joshua Seagraves, another inmate at HCDC.

18. On August 19, 2019, Spencer's shift began at 5:00 a.m., and her shift ended at 5:00 p.m., during which the following events took place:

   a. At approximately 1:55 p.m., Spencer conducted rounds, during which she handed out snack packs to the inmates.

   b. At approximately 2:10 p.m., Spencer conducted rounds and, upon arriving at Mr. Lambright's cell, noticed him sitting down. She then continued walking past a few more cells before doubling back to Mr. Lambright's cell. Upon doubling back to Mr. Lambright's cell, Spencer noticed Mr. Lambright had hanged himself by fastening one end of cloth around his neck and the other end around the top bunk.

   c. Spencer informed jail staff of what she saw through the radio she was carrying. Officers and other jail staff arrived and cut the cloth to remove Mr. Lambright from the hanging position. Jail staff attempt to resuscitate Mr. Lambright but were unsuccessful.

   d. Jail staff contacted Emergency Medical Services ("EMS") to assist with providing aid to Mr. Lambright, but EMS was also unable to resuscitate him.

e. EMS transported Mr. Lambright's body to a local hospital where he was pronounced dead.

13. Mr. Lambright died, intestate, on August 19, 2019. On November 15, 2019, Plaintiff, as Mr. Lambright's mother and next of kin, opened Mr. Lambright's estate, Haywood County File No. 19 E 652, and qualified as Administrator therefor.

14. The North Carolina State Bureau of Investigations ("SBI") investigated Mr. Lambright's death, during which investigators interviewed several inmates and staff at HCDC.

15. Dustin Shawn Ingle ("Ingle"), an inmate at HCDC, was in a neighboring cell to Mr. Lambright and was one of the inmates interviewed by SBI. Ingle informed SBI that Mr. Lambright had been complaining to jail staff about needing his medication and personally heard Mr. Lambright requesting said medication from jail staff.

16. Jerry Dwain Pearce ("Pearce"), an inmate at HCDC, was in a neighboring cell to Mr. Lambright and was interviewed by SBI. Pearce told SBI that when Mr. Lambright was in lock back, he told Pearce several times that he needed his meds. Pearce also heard Mr. Lambright request his medication from jail staff.

17. Pursuant to the Haywood County Sheriff's Office Manual ("Manual"), when an inmate is in lock back, he is in segregation, and a qualified health care professional should visit each inmate a minimum of once a day and more often if needed. A medical assessment should be documented in the inmate's medical file. Mental health staff or a qualified mental health professional should also conduct weekly rounds due to the possibility of self-inflicted injury and depression during periods of segregation, and the mental health progress notes and management plan should reflect the changed environment.

18. Pursuant to the Manual, a staff member shall conduct a face-to-face check of all inmates on lock back at least every thirty (30) minutes on an irregular schedule. All management, program staff, and qualified health care professional visits shall be documented on the appropriate records and logs and retained in accordance with established records retention schedules.

19. Pursuant to the Manual, an inmates segregation cell is not supposed to contain certain items or fixtures, such as bed sheets and shelves.

20. Upon information and belief, other than the automated recordings from the rounds that officers make to every inmate's cell, no records indicate anyone checked on Mr. Lambright pursuant to procedures set forth in the Manual for inmates in segregation.

21. Upon information and belief, HCDC denied Mr. Lambright his prescribed mental health medication and therefore HCDC staff knew or should have known of the increased probability that Mr. Lambright would harm himself or commit suicide.

22. Upon information and belief, HCDC failed to supervise Mr. Lambright while in segregation and therefore HCDC staff knew or should have known of the increased probability that Mr. Lambright would harm himself or commit suicide.

23. Upon information and belief, had HCDC provided Mr. Lambright with his prescribed mental health medication and/or properly supervised him consistently with protocols set forth in the Manual while he was in segregation, Mr. Lambright's death could have been prevented.

### COUNT I: VIOLATION OF THE EIGHTH AMENDMENT

24. Plaintiff incorporates above paragraphs 1-23 by reference as if fully set forth herein.

25. The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

26. To sufficiently allege a claim for violation of one's Eighth Amendment rights, one must allege that the prison official acted with a sufficiently culpable state of mind and that the deprivation suffered or injury inflicted on the inmate was sufficiently serious. *Smith v. Smith,* 589 F.3d 736, 738 (4th Cir. 2009) (citing *Iko v. Shreve,* 535 F.3d 225 (4th Cir. 2008)).

27. Deliberate indifference to the serious medical needs of prisoners can be manifested "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment." *Smith v. Smith,* 589 F.3d 736, 738 (4th Cir. 2009).

28. Upon information and belief, the Defendant(s) violated Mr. Lambright's rights under the Eighth Amendment of the United States Constitution, with a sufficiently culpable state of mind, thereby resulting in his death in that the Defendant(s):

(a) disregarded Mr. Lambright when he informed them he was taking a prescribed mental health medication;

(b) failed to provide Mr. Lambright with his medication despite repeated requests;

(c) failed to make any effort to determine whether Mr. Lambright had a current prescription for any medication after receiving his requests;

(d) failed to make any effort to determine whether Mr. Lambright has been diagnosed with any mental health condition for which prescription medications are a common part of treatment;

(e) failed to properly supervise Mr. Lambright while in segregation, an environment known to significantly increase the likelihood of an inmate inflicting harm on oneself or committing suicide, while continuously denying him his medication; and

(f) locked him in a segregation cell that contained items prohibited by the Manual due to their common use in inmate suicide and/or self-infliction of injury.

29. Mr. Lambright suffered a wrongful death directly and proximately caused by the Defendant(s) violation of his rights under the Eighth Amendment against cruel and unusual punishment.

## COUNT II: WRONGFUL DEATH

30. Plaintiff incorporates above paragraphs 1-29 by reference as if fully set forth herein.

31. Pursuant to N.C. Gen. Stat. § 28A-18-2(a), "when the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled the injured person to an action for damages therefor, the person or corporation that would have been so liable…shall be liable to an action for damages, to be brought by the personal representative…of the decedent."

32. Pursuant to N.C. Gen. Stat. § 28A-18-2(b), damages recoverable for death by wrongful act include (i) expenses for care, treatment and hospitalization incident to the injury resulting in death; (ii) compensation for pain and suffering of the decedent; (iii) reasonable funeral expenses of the decedent; (iv) present monetary value of the decedent to the persons entitled to receive the damages recovered, including by not limited to compensation for the loss of the reasonably expected net income of the decedent, services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered, society, companionship, comfort, guidance, kindly offices, and advice of the decedent to persons entitled to the damages recovered; (v) such punitive damages as the decedent could have recovered pursuant to Chapter 1D of the General Statutes had the decedent survived, and punitive damages for wrongfully causing the death of the decedent through malice or willful or wanton conduct, as defined by G.S. 1D-5; and (vi) nominal damages when the jury so finds.

33. On November 15, 2019, Plaintiff qualified as the Administrator of Mr. Lambright's estate as shown in Haywood County File No. 19 E 652.

34. As set forth hereinabove, Mr. Lambright's death was directly and proximately caused by wrongful acts, neglect, or default such that if he had lived he would have been entitled to bring an action for damages therefor against the Defendant(s).

35. Upon information and belief, because of the Defendant(s)' wrongful acts, neglect, or default which directly and proximately caused Mr. Lambright's death, the Plaintiff has suffered damages for which she can recover from the Defendant(s) under N.C. Gen. Stat. § 28A-18-2(b).

**COUNT III: *MONELL v. DEP'T OF SOCIAL SERVICES*, 436 U.S. 658 (1977)**

36. Plaintiff incorporates above paragraphs 1-36 by reference as if fully set forth herein.

37. On August 19, 2019, Christopher, under the authority delegated to him by Haywood County as the elected Sheriff, was responsible for establishing, enforcing, directing, supervising, and controlling the customs, practices, usages, and procedures applicable to deputies of the Haywood County Sheriff's Office. Upon information and belief, Christopher remains the elected Sheriff of Haywood County with substantially the same duties and responsibilities he had on August 19, 2019.

38. Upon information and belief, Christopher, and/or Haywood County are jointly and severally responsible for establishing, enforcing, directing, supervising, and controlling the customs, practices, usages, and procedures applicable to the Haywood County Sheriff's Office such that their edicts, acts, directions, or lack thereof, regarding customs, practices, usages, and procedures represent official policy of the Haywood County Sheriff's Office.

39. Upon information and belief, Christopher, and/or Haywood County, have maintained, or should have known that they maintained a policy, custom, or pattern of promoting,

facilitating, and condoning (i) depriving of prescribed medication to inmates; (ii) ignoring obvious signs and risks of suicide present in inmates; (iii) failing to abide by policies set forth in the Manual related to supervision of inmates in segregation; and/or (iv) failing to abide by policies set forth in the Manual related to inmate access to medical care.

40. Upon information and belief, HCDC ignored obvious signs and risks of suicide present in inmates housed in the HCDC when placing Mr. Lambright in lock back, resulting in the violation of his civil rights and damages caused thereby, was consistent with the policy, custom, or pattern of promoting, facilitating, and/or condoning ignored obvious signs and risks of suicide risks present in inmates housed in the HCDC maintained with actual or constructive knowledge and deliberate indifference by Christopher, and/or Haywood County.

41. Any reasonable policymaker would know that custom and usage maintained by Christopher, and/or Haywood County would lead to violations of civil rights of inmates such as those suffered by Mr. Lambright.

42. As a direct result of the policy, custom, or pattern of promoting, facilitating, and condoning ignored obvious signs and risks of suicide risks present in inmates housed in the HCDC, Mr. Lambright suffered violations of his civil rights and damages.

43. Upon information and belief, under *Monell v. Dept. of Social Servs,* 436 U.S. 658 (1977), Christopher, and Haywood County are jointly and severally liable for the damages suffered by Mr. Lambright as a result of the violation of his civil rights which directly and proximately caused his wrongful death.

## COUNT IV: PUNITIVE DAMAGES

44. Plaintiff incorporates above paragraphs 1-44 by reference as if fully set forth herein.

45. Pursuant to N.C. Gen. Stat. § 1D-15(a), punitive damages may be awarded if the claimant proves the defendant is liable for compensatory damages and that the defendant engaged in willful or wanton conduct related to the injury for which compensatory damages were awarded.

46. Pursuant to N.C. Gen. Stat. § 1D-5(7), "willful or wanton conduct" is a conscious and intentional disregard or the indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm.

47. Defendants maliciously, wantonly, unlawfully, and unnecessarily ignored obvious signs and risks of suicide risks present in inmates housed in the HCDC, a blatant disregard for Mr. Lambright's right to remain free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution, and their acts, neglect and/or default directly and proximately caused Mr. Lambright's wrongful death.

48. Pursuant to N.C. Gen. Stat. § 28A-18-2(b)(5), punitive damages are recoverable in an action brought under N.C. Gen. Stat. § 28A-18-2(a), and the Plaintiff may so recover punitive damages from the Defendant(s).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray the Court for the following relief:

1. That the Plaintiff have and recover from the Defendant(s) damages in an amount greater than One Million and No/00 Dollars ($1,000,000.00);

2. That this Court award Plaintiffs pre-judgment and post-judgment interest and recovery of costs, including reasonable attorney's fees, pursuant to 42 U.S.C. §§ 1988 and 1920;

3. That the Plaintiffs have a trial by jury on all issues and claims so triable set forth in this Complaint;

4. That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

5. That this Court retain jurisdiction of this matter for the purpose of enforcing orders of this Court; and

6. That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted this the 19th day of August, 2021.

s/Nicholas A. White
N.C. State Bar: 53661
Lindsay Law, PLLC
46 Haywood Street, Suite 200
Asheville, NC 28801
Telephone: (828) 551-6446
Email: nick@lindsaylaw.org
*Attorney for the Plaintiff*